UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-00205-SEB-MJD-01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| GARY SELLERS | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cr-00205-SEB-MJD |
| | ) | |
| GARY SELLERS, | ) -01 | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Gary Sellers has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 210. Mr. Sellers seeks immediate release from incarceration based on his risk of severe illness should he contract COVID-19 and family circumstances (pending adoption proceedings affecting his parental rights over his minor child). *Id.* For the reasons explained below, his motion is **DENIED**.

**I.     Background**

In April 2019, Mr. Sellers pled guilty to one count of conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine (actual) and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & 846 and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Dkts. 156, 159. According to the presentence investigation report, between 2015 and 2017, Mr. Sellers distributed approximately 137.6 grams of actual methamphetamine, 274.01 grams of heroin and 137.99 grams of fentanyl within the Southern District of Indiana. Dkt. 153. While executing a search warrant at Mr. Sellers's residence, officials found three handguns and approximately $8,000 in cash. *Id.* One of the guns and some of the cash were found in a hidden compartment in vehicle found in Mr. Sellers's garage. The car was

2

registered in under a fake identity used by Mr. Sellers. *Id.* A Rolex watch was also found during the search; the watch was purchased by Mr. Sellers using profits from his drug trafficking activity. The Court sentenced Mr. Sellers to 120 months of imprisonment, on each count, to run concurrently, followed by 5 years of supervised release. Dkts. 156, 159. The Bureau of Prisons ("BOP") lists Mr. Sellers's anticipated release date (with good-conduct time included) as May 18, 2026.

Mr. Sellers is 47 years old. He is currently incarcerated at USP Big Sandy in Inez, Kentucky. As of July 14, 2021, the BOP reports that no inmates or staff members at USP Big Sandy have active cases of COVID-19; it also reports that 693 inmates at USP Big Sandy have recovered from COVID-19 and that no inmates at USP Big Sandy have died from the virus. https://www.bop.gov/coronavirus/ (last visited July 15, 2021). The BOP also reports that 859 inmates and 148 staff members at USP Big Sandy have been fully inoculated against COVID-19. *Id.* That is, 66% of the inmates at USP Big Sandy have been fully inoculated against COVID-19. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of July 14, 2021, the BOP reports that USP Big Sandy and the camp at USP Big Sandy have a total inmate population of 1285).

Counsel filed a motion for compassionate release on behalf of Mr. Sellers, dkt. 210, the United States filed an opposition to the motion, dkt. 215, and Mr. Sellers filed a reply, dkt. 217. After several additional supplements from Mr. Sellers, dkts. 218, 224, 228, 244, and responses from the United States, dkts. 226, 227, 243, the motion is now ripe for decision.

**II.     Discussion**

Mr. Sellers seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 210. Specifically, he contends that his medical

3

conditions (sleep apnea, irregular heartbeat and hypertension), which make him more susceptible to severe complications from COVID-19, combine with the BOP's inability to control COVID-19 outbreaks in their facilities to establish extraordinary and compelling reasons to reduce his sentence to time served. *Id.* Mr. Sellers argues that he also establishes extraordinary and compelling reasons to release him because one of his children is the subject of a contested petition for adoption by a step-parent, and Mr. Sellers is at risk of losing his parental rights for that child. Dkt. 224. In opposition, the United States argues that Mr. Sellers has not established extraordinary and compelling reasons warranting release, that he would pose a danger to the community if released, and that the § 3553 sentencing factors weigh against granting release. Dkts. 215, 226.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[1] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

---

[1] The United States concedes that Mr. Sellers exhausted his administrative remedies. Dkt. 215 at 2.

4

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his

sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling

reason warranting a sentence reduction;[2] (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

The risk that Mr. Sellers faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release him, whether alone or in combination with his desire to retain his parental rights. While the Court sympathizes with Mr. Sellers's fear of contracting the virus, the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD01, dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction).

Mr. Sellers claims that he is at an increased risk of experiencing severe COVID-19 symptoms because he suffers from various medical conditions—specifically, sleep apnea, irregular heartbeat and high blood pressure. The CDC (Centers for Disease Control) has not recognized sleep apnea or irregular heartbeat as conditions that can make you more likely to get severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

---

[2] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court has considered the rationale provided by Mr. Sellers's warden in denying Mr. Sellers's administrative request for relief. Mr. Sellers's warden appears not to have considered the possibility that Mr. Sellers could show an "extraordinary and compelling reason" under Subsection (D) of the policy statement. *See* dkt. 210-1. Thus, the warden's decision provides little guidance to the Court's analysis.

precautions/people-with-medical-conditions.html (last visited July 14, 2021). While the CDC does identify hypertension as a condition that can possibly make you more likely to get severely ill from COVID-19, *see id.*, it does not appear that Mr. Sellers has been diagnosed with hypertension, only that he has had intermittent instances of elevated blood pressure. Dkt. 218.

Regardless, even if Mr. Sellers did have a condition that increased his risk of experiencing severe COVID-19 symptoms, he declined the opportunity to receive the Pfizer vaccine. Dkt. 243-1. His counsel represents Mr. Sellers learned that many staff members had refused the vaccine and that the BOP did not provide detailed public education materials about the vaccine. Dkt. 244 at 2. Counsel also notes that the United States government has a "sordid history" of medical experimentation on prisoners and African-Americans, medical professionals have neglected the health needs of the African-American community, the available COVID-19 vaccines have yet to be fully approved by the FDA, the CDC has recognized complications from all the major vaccines, the vaccine offered to Mr. Sellers might not have protected him against virus variants, and prisoners may not be able to receive timely treatment if they experience side effects from the vaccine. *Id.* at 2–4. Counsel represents that, when he talked to Mr. Sellers, Mr. Sellers told him that he would like to consult with a medical professional or doctor to determine whether it is in his best interest to receive the vaccine. *Id.* at 4. Mr. Sellers has not presented any evidence that he declined the vaccine for any of the above-stated reasons or that he has been denied the opportunity to consult with a medical professional about whether it would be advisable for him to receive the vaccine. Regardless, the question is not whether Mr. Sellers has presented a good enough reason for declining the vaccine. He is, of course, free to refuse the vaccine. The question the Court faces is whether extraordinary and compelling reasons support his immediate release. The Court finds that they do not.

Three vaccines are being widely distributed in the United States, including the Pfizer vaccine that Mr. Sellers was offered. Although no vaccine is perfect, the CDC has recognized that mRNA vaccines like the Pfizer vaccine are effective at preventing COVID-19 and that COVID-19 vaccination prevented most people from getting COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited July 16, 2021). The CDC also reports that the COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States. *Id.* The vaccines are not 100% effective, and some vaccinated people may still get sick. *Id.* The CDC reports, however, that mRNA COVID-19 vaccines have been shown to provide protection against severe illness and hospitalization among people of all ages eligible to receive them, including people 65 years and older who are at higher risk of severe outcomes from COVID-19. *Id.*

COVID-19 vaccines have been made widely available within the BOP, including at USP Big Sandy. Indeed, Mr. Sellers was offered the opportunity to receive the vaccine. As noted above, about two-thirds of the inmates have now been fully inoculated against COVID-19, which should provide some protection to Mr. Sellers. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited July 16, 2021) ("In addition to providing protection against COVID-19, there is increasing evidence that COVID-19 vaccines also provide protection against COVID-19 infections without symptoms (asymptomatic infections). COVID-19 vaccination can reduce the spread of disease overall, helping protect people around you."). This widespread vaccination effort appears to be meeting with some success, as evidenced by the fact that USP Big Sandy currently has no active COVID-19 infections among inmates or staff.

Given these facts, absent some evidence that the vaccine is medically contraindicated for Mr. Sellers, the Court declines to find that the risks he faces from the COVID-19 pandemic are an extraordinary and compelling reason warranting his immediate release. *See United States v. Sigers*, No. 3:17-cr-40-RLY-MPB-13, dkt. 647 (S.D. Ind. Apr. 19, 2021) (finding no extraordinary and compelling reason where defendant had conditions that increased risk of severe COVID-19 symptoms but declined vaccine without giving explanation); *see also United States v. Tello*, No. 4:18-CR-7, 2021 WL 2005792, at *7 (E.D. Tex. May 18, 2021) (a prisoner "cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated"); *United States v. Garcia*, No. 14-CR-20035, 2021 WL 1499312, at *4 (C.D. Ill. Apr. 16, 2021) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief."); *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), [Defendant] declined the opportunity to reduce his exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction.").

Mr. Sellers's desire to be released so as to better litigate the adoption proceedings filed by his minor child's step-parent also does not establish extraordinary and compelling reasons warranting early release, whether alone or in combination with the risk he faces from COVID-19. Dkt. 224. While the Court is sympathetic to Mr. Sellers's situation and the possibility that he may lose his parental rights as a result of the ongoing adoption proceedings, that is a potential consequence of incarceration for many individuals. This is not a situation where his child has no alternative caregivers other than Mr. Sellers. Mr. Sellers's minor child has not only his biological mother who can, and does, provide care for him, but also the child's step-father who provides care

10

and financial support as well. Finally, by his counsel's own admission, Mr. Sellers has been opposing the adoption proceedings from prison, and there is no reason to believe he cannot continue to do so. Accordingly, the Court does not find that Mr. Sellers has established extraordinary and compelling reasons warranting compassionate release.

Even if Mr. Sellers had done so, the Court finds that the applicable § 3553(a) sentencing factors weigh against granting request for compassionate release. The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The Court will address those factors that are applicable to Mr. Sellers's motion.

Here, Mr. Sellers purports to suffer from a medical condition that may increase his risk of experiencing severe symptoms if he contracts COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 15, 2021) (identifying hypertension as a condition that possibly can make you more likely to get severely ill from COVID-19). Moreover, the nature of prisons means that the virus can spread quickly and that inmates have little ability to protect themselves

11

from the virus. However, while USP Big Sandy experienced a significant outbreak of COVID-19, the BOP's efforts to control the virus among the inmate population appear to be having some success. More than two-thirds of the inmates at USP Big Sandy have been fully inoculated against COVID-19. Thus, the risk that Mr. Sellers will actually contract COVID-19 has been significantly reduced. In short, the Court is aware of the risk that Mr. Sellers faces from COVID-19 and has given it appropriate weight in its consideration of the § 3553(a) factors.

Also weighing in Mr. Sellers's favor, he has completed several BOP classes and programs, including anger management, accounting, Spanish, drug education and creative writing, as well as obtaining his GED. Dkt. 228-1. Mr. Sellers reports that he has not had any disciplinary infractions. Dkt. 210. If or when he is released, Mr. Sellers will be residing with one of his children and the child's mother at her home in Kentucky. Mr. Sellers's support system will consist of his long-time girlfriend, his child's mother and extended family members. Mr. Sellers hopes to marry his girlfriend upon release. Mr. Sellers will be employed at "Please and Thank You", a highly renowned bakery in Louisville, Kentucky, and he plans to learn how to invest in real estate from a family member in Washington, D.C., in an effort to soon start fixing up homes and reselling them.

Weighing against him, Mr. Sellers pled guilty to distributing a substantial amount of methamphetamine, heroin and fentanyl. When he was arrested, officials found multiple guns in his possession. Mr. Sellers has felony convictions for possession of marijuana in 1997 and possession of cocaine in 2003. Dkt. 153. Mr. Sellers has only completed slightly more than 40% of his sentence, and he is not scheduled to be released for approximately 5 years.

In light of these considerations, the Court finds that releasing Mr. Sellers early would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; or protect the public from further crimes.

The Court is sympathetic to the risks Mr. Sellers faces from COVID-19 but does not find that the current magnitude of those risks (whether alone or in combination with his desire to litigate the pending adoption case involving his son) warrant releasing him from incarceration at this time. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming denial of motion for compassionate release where district court found that § 3553(a) factors weighed against release despite COVID-19 risk because defendant committed serious offense and had only served one-third of sentence).

### III.  Conclusion

For the reasons stated above, Mr. Sellers's motion for compassionate release, dkt. [210], is **denied**.

**IT IS SO ORDERED.**

Date:   7/27/2021

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

13